The opinion of the Court was delivered by
Wardlaw, J.
The Circuit Courts of Law are successors of the General Court which formerly subsisted in Charleston, and, when not restrained by our legal or constitutional regulations, have the power and jurisdiction which pertain to the Eang’s Bench and Common Pleas in England.(a) They are Courts of general jurisdiction, of the highest dignity known to our laws. Within their jurisdiction fall all actions and prosecutions in behalf of the State, even when jurisdiction is given to another tribunal by words not plainly exclusive. The general rule is, that an Act of the Legislature shall not be. construed to oust them of jurisdiction, except by express provision or necessary implication.(b)
The fourth section of the Act concerning District Courts, which was passed at the extra session of the Legislature, September, 1866,(c) is in these words: “ That the District Court shall have exclusive jurisdiction, subject to the right of appeal to the Appeal Court, in all cases of larceny and misdemeanor, in all cases of vagrancy, and in all cases of bastardy, arising within the limits of the election district in which they are established.” The exclusion of all other tribunals from jurisdiction in the specified cases is express, but it clearly was not *38 meant to be absolute and complete. “ All cases of vagrancy” are specified. Inferior tribunals are more readily excluded than superior ones; yet the tenth section of the Act leaves no room for doubt that, in cases of vagrancy, the jurisdiction of magistrates and freeholders, under the Act of 1787, was not excluded, but was specially intended to be exercised. If we say, however, that only tribunals, commonly called Courts, were in contemplation, and that the word “ exclusive,” if it has any meaning, excluded the Circuit Courts, it remains to be considered when the exclusion commenced and to what cases it extended.
The Act regards the District Courts as already established; that is, authorized and regulated by enactments made, under the power which the Constitution of the State gives the Legislature, to direct and establish Courts. But the forty-ninth section of the. establishing Act of December, 1865,(a) had stayed the commissions of the District Judges, “until the Governor shall be satisfied that they will be permitted to exercise the jurisdiction committed to them.” The Act of September, 1866, repeals the Act of 1865, except as to its first two sections, and, in its second section, directs that the “ District Courts, heretofore established by law, be organized, by the Judge thereof, immediately after the passage of this Act.” We are not informed what was done toward organization in Spartanburg District; but it is said that we must presume that the District Judge there did his duty as directed. If so, he was, at the Fall Term of the Circuit Court, when the case before us was tried, ready, with officers and books, to exercise his office; but he could try no case of larceny or misdemeanor, for the time appointed by the Court of Appeals, under the twelfth section of the District Court Act of September, 1866, for the first quarterly session of the District Court had not come, and the new machinery could not have been put into *39 operation. Did the Legislature mean that there should be an interregnum, during which no criminal justice could be administered with respect to large classes of offences ? The words used do dot require this construction. No provision was made for transferring cases from the superior Court to the District Court; and there is no known process by which an inferior Court can draw to itself* a case wherein a superior Court is usurping its jurisdiction. The superior Court had possession of this case, wherein its grand-jury had found a bill, at Spring Term, 1866. If the case had gone to the District Court, were proceedings there to be commenced de novo — another bill and another finding by a gi*and-jury to be had? Or, in what anomalous form were the proceedings, already had, to be certified to the inferior Court? By what authority were the conditions of recognizances to be changed ? What expression, or necessary implication, was there to restrain the superior Court in proceeding, according to its long-established right and usage, to dispose of the case regularly brought before it, and in no way withdraw from it? The silence of the Act of September, 1866, on these points, directs attention to the very words used in the grant of exclusive jurisdiction. “Cases arising” — that is, cases which arise; the present used for the future, as is often done in Legislative Acts and other compositions. An example may be seen at the close of the first section of this Act of September — salaries shall commence “ when the Court is organized.” The Court shall have jurisdiction of cases which arise means that, as a case comes up, the jurisdiction shall embrace it. Cases that had arisen before the organization of the District Court are not within the words, and, we think, were not ' within the intention of the Legislature. In confirmation of the opinion which we form from the District Court Act of September, 1866, standing alone, we notice that, on the same day that Act was passed, another Act was passed “ to alter and fix the times for holding the Courts of Common Pleas in *40 this State,”(a) by which the Circuit Courts were, at Pall Term, 1866, deprived of the power to do much, if any, business besides the trial of cases of tort and cases in the sessions. It may well be supposed that the intention was to afford to them ample time for disposing of all criminal matters before them, including cases of larceny and misdemeanor, so that, at the next Spring Term, when the great accumulation of civil business was expected to occupy their time, the District Courts might relieve them of specified cases arising after their organization.
The motion is dismissed.
Dunkin, C. J., and Inglis, A. J., concurred.

Motion dismissed.

 See Statutes cited 2 Spear, 505; 4 State, 393.

 Con. Dig., “Courts.”

 13 Stat. 387.

 13 Stat. 30.

 13 Stat. 392.